[Cite as *State v. Rosa*, 2012-Ohio-1042.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96587**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALFREDO ROSA

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-517590

BEFORE:    Celebrezze, P.J., S. Gallagher, J., and Kilbane, J.

RELEASED AND JOURNALIZED:    March 15, 2012

**ATTORNEY FOR APPELLANT**

John P. Parker
988 East 185th Street
Cleveland, Ohio   44119


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Mark J. Mahoney
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Defendant-appellant, Alfredo Rosa, appeals his convictions on 12 counts of unlawful sexual conduct with a minor. For the reasons that follow, we affirm in part, reverse in part, and remand.

{¶2} During the summer of 2008, appellant and his wife, Diana Rosa, began a sexual relationship with a then 15-year-old family friend, "K.G." The Rosa family and K.G.'s family had become acquainted while attending the same church. K.G.'s mother ("Mother") assisted with the youth church, where appellant and Diana also volunteered. K.G. had spent time playing at appellant's house with his niece and would often go there to get away from the burdens of helping to raise two younger half-siblings. In the summer of 2008, after the death of K.G.'s grandmother, she began spending more time at appellant's house. She often stayed overnight on the weekends, playing with appellant's children and spending time talking with appellant and Diana.

{¶3} K.G. testified that early in August 2008, she told appellant that she had a "crush" on him. After a few days, appellant and K.G. engaged in sexual activity on two occasions. After these two incidents, K.G., appellant, and Diana were seated at the kitchen table at the Rosa house when they began discussing K.G.'s feelings for appellant. The three often communicated by writing in a notebook and passing it between themselves. K.G. testified that Diana handed her a list of questions asking her if she

would like to have a sexual relationship with Diana and appellant. This list, entitled "Random ?'s," was then verbally discussed between the three. K.G. circled or placed a check mark next to questions she would agree to discuss with the other two. K.G. testified that by the end of the discussion, she had agreed to engage in a sexual relationship with appellant and Diana.

{¶4} The following weekend, K.G. spent the night at the Rosas' house. K.G., appellant, and Diana engaged in sexual activities in the couple's bedroom. On September 26, 2008, the trio engaged in another sexual encounter in the living room of the Rosas' home.

{¶5} K.G. had kept the list of questions appellant had presented to her entitled "Random ?'s" as well as other notes between the trio. K.G. testified that she usually kept them in a box in her closet, but on the morning of October 3, 2008, she had forgotten them on the counter in the bathroom. K.G.'s mother discovered these notes. K.G. testified that, upon realizing that the notes were missing, she called her mother and verified that she had the notes, then she called appellant and Diana to advise them the notes had been found. Appellant instructed K.G. to minimize any relationship they had and say it was only "kissing and touching."

{¶6} K.G.'s mother testified that she took the notes to work and read them. Although the notes did not contain any names or descriptions of the activities the three had engaged in, they were enough to deeply disturb Mother. She was unable to finish work and called her ex-boyfriend to pick her up. Mother, along with her husband, her

ex-boyfriend, and K.G., went to appellant's home to confront him and Diana about the notes. The two were not at home, and the group left to return later that day.

**{¶7}** When the group returned, they discussed the notes with appellant and Diana on the front lawn of the Rosas' home so that appellant's children would not hear. K.G.'s mother and her husband both testified that, upon confrontation, appellant was apologetic and stated there had only been "kissing and touching" and that Diana stated "they had agreed to wait until [K.G.] was 18 before they had sex with her." K.G. corroborated this statement at the time. Mother testified that the group parted amicably, but that she still had questions. A few days later, she called the police and made a report.

**{¶8}** Detective Pamela Berg of the Cleveland Police Sex Crimes and Child Abuse Unit testified that she followed up with K.G. and her mother. Det. Berg stated that she took a statement from K.G. that detailed various sexual activities that took place between K.G., appellant, and Diana. Prior to giving this written statement, K.G. had only stated there had been some "kissing and touching."

**{¶9}** Appellant and Diana were indicted on November 7, 2008, and charged with 12 counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), with only six counts applicable to Diana. Trial began on February 23, 2009, and resulted in a guilty verdict on all charges. On March 19, 2009, appellant was sentenced to an eight-year aggregate term of imprisonment. Appellant was classified as a Tier II sex offender and was advised of postrelease control.

**{¶10}** Diana was sentenced to a six-year term of imprisonment. She perfected a timely appeal from her convictions and sentence to this court, which affirmed the trial court's judgment in all respects. *State v. Rosa*, 8th Dist. No. 93108, 2010-Ohio-2215, 2010 WL 2007199 ("*Rosa I*"). Appellant, however, failed initially to timely perfect his appeal to this court. Appellant's motion for delayed appeal was ultimately granted.

**{¶11}** Appellant now brings this appeal, raising four assignments of error for review.[1]

Law and Analysis

I. Ineffective Assistance of Counsel

**{¶12}** In his first assignment of error, appellant argues that he received ineffective assistance of counsel. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986).

**{¶13}** In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and

---

[1] Appellant's assignments of error are contained in the appendix to this opinion.

competent manner. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985); *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965).

{¶14} The Ohio Supreme Court held in *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989):

> "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. This standard is essentially the same as the one enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668 * * *.
>
> Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United States v. Morrison*, 449 U.S. 361, 364-365 [101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981)." *Strickland*, supra, 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, supra, at 694, 104 S.Ct. at 2068. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. *Bradley* at 142.

{¶15} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id*. at 143.

{¶16} Appellant raises several claims of ineffective assistance of counsel. We address each alleged instance individually. First, appellant contends he received ineffective assistance when his counsel failed to object to the testimony of Charlene Gerhart. At trial, counsel for co-defendant, Diana, called Charlene to testify on Diana's behalf. Charlene testified that, in 2007, Diana approached her about engaging in sexual activity with her and appellant. Charlene testified that Diana had written several questions in a notebook and presented it to Charlene for her consideration. Ultimately, Charlene declined the invitation to engage in sexual activities with Diana and appellant.

{¶17} Appellant argues that Charlene's testimony was improper and in violation of Evid.R. 404(B). Evid.R. 404(B) provides:

> (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶18} On review of the record, it is evident that Diana's counsel intended to introduce Charlene's testimony in order to rebut the credibility of the victim, K.G. During the direct examination of K.G., the prosecution introduced a letter entitled "Random ?'s" into evidence. K.G. testified that Diana presented her with the letter while K.G. was in the Rosas' home in the summer of 2008. On cross-examination, K.G. acknowledged that she personally witnessed Diana draft the letter. K.G. testified that the questions contained in the letter related to appellant's and Diana's invitation to K.G.

to engage in sexual activity. K.G. testified that she placed check marks next to questions she felt comfortable answering.

{¶19} To cast doubt on the veracity of K.G.'s testimony, Diana's counsel attempted to demonstrate that the document entitled "Random ?'s" was, in fact, written by Diana for Charlene in 2007. During direct examination, Charlene testified that she recognized the document entitled "Random ?'s" as the document presented to her by Diana. Charlene testified that the letter was the exact document presented to her in 2007, except that the document contained markings that were not present at the time she received it from Diana. In short, Diana's counsel intended to establish that the document entitled "Random ?'s" was not created in K.G.'s presence as she claimed. Rather, Diana's counsel proposed that the letter was drafted approximately one year prior to the time the allegations involving K.G. arose and was only presented to Charlene.

{¶20} This is not a scenario where the prosecution attempted to introduce improper 404(B) evidence in order to establish appellant's propensity to act in conformity therewith. Rather, the decision to introduce Charlene's testimony was based on trial strategy. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 111.

{¶21} Here, appellant and Diana shared a mutual theory of defense, i.e. K.G. had made up the allegations. Moreover, counsel's questions of Charlene during direct examination clearly were made in furtherance of the theory of the defense. Counsel's

strategy may have proved unsuccessful, but this fact, in itself, does not establish ineffective assistance. *Id*. at ¶ 115. Therefore, appellant's counsel did not err in failing to object to Charlene's testimony.

{¶22} Next, appellant contends that he received ineffective assistance based on his counsel's failure to request severance or separate trial. Specifically, appellant argues that counsel had a duty to request severance where he knew that Charlene's prejudicial testimony would be introduced.

{¶23} The joinder of defendants and the avoidance of multiple trials is favored in the law because joinder "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

{¶24} R.C. 2945.13 states:

When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefor by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately.

{¶25} Whether an accused shall be tried separately from a co-defendant is a matter within the sound discretion of the trial court. *State v. Abbott*, 152 Ohio St. 228, 89 N.E.2d 147 (1949). Joinder is the rule rather than the exception. The burden is on the defendant to show good cause why a separate trial should be granted and that the trial

court abused its discretion in refusing to do so. A trial court is to grant a severance of defendants "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations, or complaints * * *." Crim.R. 14. A defendant claiming error in the trial court's refusal to sever offenses or defendants has the burden to affirmatively show that his rights were prejudiced by the joinder. *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981).

{¶26} On review of the record, appellant has failed to affirmatively demonstrate that his rights were prejudiced by the joinder of the parties. Despite appellant's position to the contrary, Charlene's testimony did not amount to the confession of a non-testifying co-defendant. Rather, the decision to question Charlene about her experience with appellant and Diana was made in furtherance of their theory of defense. Moreover, the charges brought against appellant and Diana involved similar conduct, witnesses, and evidence. To have tried the co-defendants' cases separately would have resulted in nearly identical trials, resulting in an inefficient misuse of judicial time and resources without any advantage to appellant. Therefore, we are unable to conclude that appellant's trial counsel erred in failing to file a written or oral motion for a separate trial.

{¶27} Next, appellant argues that his counsel failed to object to Det. Berg's testimony involving the veracity of two witnesses. Specifically, the state asked Det. Berg if she obtained written statements from K.G. and her mother. Det. Berg testified

that she had. The state next asked Det. Berg if their respective statements were "consistent with [their] testimony that you saw in court?" She replied, "[i]t was." The state then asked, "[d]id you find any material inconsistencies?" To which, Det. Berg responded, "I did not."

{¶28} This issue was discussed in *Rosa I*, 2010-Ohio-2215. In *Rosa I*, this court concluded that the failure to object to the above evidence was error. However, the court concluded that the error was harmless, stating:

> While it was error to allow the brief testimony of Det. Berg as to the prior statements, that testimony did not alter the outcome of the trial, which would require this court to reverse appellant's conviction. Other evidence, including the testimony of Mother, mother's husband, the notes, and the admissions by appellant and Alfredo, provide support for K.G.'s testimony without the brief improper testimony of Det. Berg. Therefore, appellant has not demonstrated that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.,* quoting *Bradley*, *supra*, at 142, 538 N.E.2d 373.

We find no basis to depart from our previous review of this issue.

{¶29} Finally, appellant argues that his counsel failed to object to the irrelevant testimony of Jonah Gerhart. During trial, Jonah was questioned by the state about a telephone conversation he allegedly had with appellant. Jonah testified that he contacted appellant and

> [t]old him to stop bugging my wife to come testify for him, and that offering us money to testify wasn't going to happen. He apologized for it, and then there was basically just him asking me please and me telling him no back and forth for a couple of minutes, and I hung up the phone.

{¶30} Appellant contends that "such testimony is confusing, not relevant and not admissible." We disagree. Information relating to appellant's attempt to pay Jonah for

his testimony relating to this case was certainly relevant. *State v. Robinson*, 7th Dist. No. 05 JE 8, 2007-Ohio-3501, 2007 WL 1976578, ¶ 61 ("The fact of whether a witness was bribed in exchange for his testimony is highly relevant to any judicial inquiry"), citing *State v. Walker*, 55 Ohio St.2d 208, 215, 378 N.E.2d 1049 (1978).

{¶31} Therefore, we are unable to conclude that appellant received ineffective assistance where an objection to Jonah's testimony on relevancy grounds would have been baseless.

{¶32} Appellant's first assignment of error is overruled.

## II. Court Costs

{¶33} In his second assignment of error, appellant argues that he was denied due process of law when the trial court failed to assess court costs in open court, and yet costs were assessed in the judgment entry. In support of his argument, appellant cites to the Ohio Supreme Court's decision in *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278.

{¶34} In *Joseph*, the court held that it is reversible error under Crim.R. 43(A) for the trial court to impose costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing. *Id.* at ¶ 22. The court reasoned that the defendant was denied the opportunity to claim indigency and to seek a waiver of the payment of court costs before the trial court because the trial court did not mention costs at the sentencing hearing. *Id.*

{¶35} The state concedes that the trial court failed to assess costs in open court. Appellant's second assignment of error is sustained. This matter is remanded to the trial court to have costs properly assessed.

### III. Spousal Competency Hearing

{¶36} In his third assignment of error, appellant argues that it was plain error under Crim.R. 52 for the trial court not to conduct a spousal competency hearing regarding statements that appellant's wife allegedly made to witness Charlene Gerhart.

{¶37} Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "'Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.' *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899." *State v. Adamson*, 72 Ohio St.3d 431, 434-435, 650 N.E.2d 875 (1995).

{¶38} In support of his argument, appellant cites to the Ohio Supreme Court's decision in *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, for the proposition that a spousal competency hearing was required. In *Brown*, the court reversed a murder conviction because the trial court failed to instruct defendant's wife on spousal competency and failed to make a finding on the record that she voluntarily chose

to testify. The *Brown* court held that failure to do so constituted reversible plain error. *Brown* observes that a spouse's decision to testify must be made with knowledge and understanding of the witness's right not to testify, and the decision must be made freely and voluntarily.

{¶39} However, appellant's reliance on *Brown* is inapplicable to the facts and circumstances in the case at hand. Unlike the scenario in *Brown*, appellant's spouse, Diana, did not elect to testify at trial. Therefore, the trial court had no basis to conduct a spousal competency hearing in this matter.

{¶40} Appellant's third assignment of error is overruled.

IV. Cumulative Errors

{¶41} In his fourth assignment of error, appellant argues that cumulative errors have denied him a fair trial under the Fourteenth Amendment to the United States Constitution.

{¶42} The "cumulative error" doctrine states that "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the numerous instances of the trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623. However, "[t]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *State v. Hill*, 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

{¶43} As we have previously discussed, the only demonstrable error we have found after review is the court's failure to properly assess costs. This error neither adversely affected the outcome of appellant's trial, nor did it cumulatively affect his right to a fair trial.

{¶44} Appellant's fourth assignment of error is overruled.

{¶45} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR

APPENDIX

Appellant's assignments of error:

I.      Defense counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution.

II.     The appellant was denied due process under the Fourteenth Amendment when the trial court imposed court costs in its sentencing journal entry but not in open court.

III.     It was plain error under Crim.R. 52 for the court to not conduct a "spousal competency hearing" concerning the alleged statements of Mrs. Rosa to Mrs. Gertrude [sic] under *State v. Brown*, 115 Ohio St.3d 55 and to not sever the defendants or give cautionary jury instructions.

IV.     The cumulative errors have denied appellant a fair trial under the Fourteenth Amendment of the Constitution.