[Cite as *State v. Ellis*, 2014-Ohio-116.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99830**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## L'DDARYL ELLIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-568532-A

**BEFORE:**   Blackmon, J., S. Gallagher, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   January 16, 2014

**ATTORNEY FOR APPELLANT**

Eric M. Levy
55 Public Square
Cleveland, Ohio 44113

L'Ddaryl Ellis
Inmate No. 641-151
Trumbull Correctional Institution
P. O. Box 901
Leavittsburg, Ohio 44430


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Scott Zarzycki
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant L'Ddaryl Ellis appeals his convictions following a bench trial and assigns the following errors for our review:

I. The trial court erred to the prejudice of appellant when it threatened State's witness A.B. Tipton forcing him to testify consistent with his police report with no regard for the truth.

II. The trial court erred in finding appellant guilty of any charges where the evidence presented at trial was insufficient to support any of appellant's convictions.

III. The trial court erred in each charge where appellant was found guilty as the manifest weight of the evidence did not support appellant's convictions.

IV. The trial court erred in failing to merge count nine felonious assault and count fourteen aggravated riot for purposes of sentencing.

V. The trial court erred in convicting appellant of felonious assaults without first considering the inferior offense of aggravated assault.

VI. The trial court erred in finding appellant guilty of any charges without first considering self-defense which appellant had proven by a preponderance of the evidence through the questioning of the state's witnesses.

VII. The trial court erred when it reviewed the trial transcript prior to reaching its verdict in a bench trial.

VIII. Appellant was denied his Sixth Amendment right to counsel due to the ineffective assistance of trial counsel.

**{¶2}** Having reviewed the record and pertinent law, we affirm all of Ellis's convictions, except the aggravated riot. The apposite facts follow.

**{¶3}** On November 29, 2012, the Cuyahoga County Grand Jury returned a 14-count indictment against Ellis relating to two separate shooting incidents. Relative to the first incident, the grand jury indicted Ellis on one count of discharge of a firearm on or

near prohibited premises and two counts of felonious assault. All three counts contained one and three-year firearm specifications.

**{¶4}** Relative to the second incident, wherein a resident of East 95th Street who had been looking through her window, was struck and killed by a bullet. The grand jury indicted Ellis on one count of discharge of a firearm on or near prohibited premises, one count of aggravated murder, one count of murder, and seven counts of felonious assault. The grand jury also indicted Ellis on one count of aggravated riot with purpose to commit or facilitate the commission of any offense of violence. All 11 counts contained one and three-year firearm specifications.

**{¶5}** On December 3, 2012, Ellis pleaded not guilty at the arraignment. Subsequently, numerous pretrials were conducted. Eventually, Ellis executed a waiver of his right to a jury trial, and on March 6, 2013, a bench trial commenced.

### Bench Trial

**{¶6}** Seventeen witnesses testified at the trial. A number of these witnesses participated in the shooting incidents, were indicted, pleaded guilty to various charges, and were already serving their sentences at the time of the trial. Several residents of East 95th Street, who were not related to members of either group involved in the gunfight, also testified at the trial.

**{¶7}** A.B. Tipton, one of the individuals who participated in the gunfight, was indicted, pleaded guilty, and had begun serving his sentence, testified at the trial. Tipton stated that on the night of March 13, 2012, he, Devon Mittman, Brennon Isom,

Jimeel Germany, and Daymond Haywood, were visiting each other in the area of East 95th Street and Quincy Avenue.

{¶8} Tipton testified that at some point, he and Germany decided to ride their bicycles to a Marathon gas station located at East 89th Street and Buckeye Road to purchase tobacco products and chips. On the way, he passed by Ellis and three other men, all of whom he recognized from seeing in and around the neighborhood. Tipton testified that as he passed by he noticed that Ellis had a gun in his hand.

{¶9} Tipton testified that on their way back from the gas station he noticed that Ellis still had the gun visible. Tipton stated that shortly after they passed Ellis and his companions, he heard gun shots in the air, prompting him and Germany to run for cover, returning back to East 95th Street to regroup with the others.

{¶10} Tipton stated that 10-15 minutes later, Ellis and his companions arrived at the south end of East 95th Street near Quebec Avenue, and immediately began shooting. Tipton stated that Ellis was shooting at him from the left side of the street and continued shooting as he came closer. Tipton exchanged gunfire, but Ellis took cover behind a parked Dodge Charger and a tree.

{¶11} Germany, who accompanied Tipton to the gas station on the night in question, testified that he saw Ellis with a gun as they went to and from the gas station. Germany testified that on the way back, shortly after they had passed Ellis and his companions, he heard someone say "get from over here" and fired a shot in the air.

{¶12} Germany and Tipton hastened back to East 95th Street and armed themselves. Germany also testified that a short time later, Ellis and his companions

arrived on East 95th Street near Quebec Avenue and immediately began shooting. Germany returned fire, but only shot in the air.

{¶13} Roderick Burnett, a companion of Ellis on the night in question, testified that Tipton and Germany did in fact pass by on their way to and from the gas station. Burnett stated that Ellis had a black semiautomatic handgun that he heard him shoot in the air shortly after Tipton and Germany passed the second time. Burnett turned around when he heard the gun shot and saw Ellis putting the gun away. Burnett testified that he believed it was a semiautomatic handgun.

{¶14} Burnett testified that some time later as he, Ellis, and the others were returning to visit someone named Chuck, they took a shortcut through East 97th Street. Burnett testified that when they got to the top of East 95th Street, they saw a black car stopped in the middle of the street, gunfire erupted, and heard bullets coming in their direction. Burnett, Ellis, and the others hid behind a parked car located on the left side of the street, and then later ran back in the direction from where they came.

{¶15} Detective Ignatius Sowa of the Cleveland Police Homicide Unit testified that he was assigned to investigate the shooting. Detective Sowa testified that after the shooting, the police responded to the house of Elissa Hereford, who had been looking through her window at the gunfight. They found Hereford's lifeless body in a pool of blood that trailed to an adjoining room, where they found a bullet hole in the wooden window frame. Detective Sowa testified that the coroner had determined that the gunshot penetrated Hereford's upper thigh and traveled to her femoral artery causing her to bleed out and die.

**{¶16}** Detective Sowa recovered numerous shell casings from the vicinity of 2323, 2315, and 2303 East 95th Street. Detective Sowa testified that of the many shell casings recovered, eight shell casings were from a 9 mm handgun that was never recovered. Detective Sowa stated that the eight shell casing were located in a direct line to Hereford's house across the street.

**{¶17}** Detective James Kooser of the Cleveland Police Department testified that he was assigned to the firearm forensic examination unit. Detective Kooser recovered several handguns from the defendants involved in the shootings and also recovered numerous shell casings from the scene. Detective Kooser testified that a morgue pellet recovered from Hereford's body matched the eight shell casings fired from the 9 mm handgun that was never recovered.

**{¶18}** At the close of the state's case, the trial court granted Ellis's motion for acquittal on six counts. The trial court later found Ellis not guilty of aggravated murder, but considered the lesser included offense of murder, as well as involuntary manslaughter, and found him guilty of involuntary manslaughter with the attached firearm specifications. In addition, the trial court found Ellis guilty of murder, two counts of felonious assault, and the single count of aggravated riot, all with the attached firearm specifications.

**{¶19}** On April 15, 2013, Ellis appeared for sentencing. The trial court merged the involuntary manslaughter, felonious assault, and aggravated riot counts with the murder count for sentencing purposes. The trial court then imposed a prison term of 15 years to life to be served after Ellis served three years for the firearm specifications.

## Admonishing the Witness

{¶20} In the first assigned error, Ellis argues he was prejudiced when the trial court threatened Tipton, a state's witness, causing him to testify in conformity with his police report. Ellis's argument is based on the premise that "coercion of a witness by the state can affect the due process rights of the defendant." *State v. Asher*, 112 Ohio App.3d 646, 650, 679 N.E.2d 1147 (1st Dist.1996).

{¶21} In the instant case, the record indicates that immediately after Tipton took the stand, he became uncooperative and refused to answer the prosecutor's questions. The prosecutor asked the trial court to instruct Tipton to answer the questions. After the trial court explained that Tipton had been subpoenaed, placed under oath, and was required to answer the questions, the following exchange took place:

> The Witness: * * * [T]his was not part of my plea bargain, so why do I have to do it?
>
> The Court: Well, because we have some rules of procedure and some laws in this State that says that if a party to a lawsuit properly subpoenas someone, they have to come to court and they have to answer questions. So whether this was part of a plea bargain or not, you're one of the millions of people who could be subpoenaed in to court to tell what they know about a set of circumstances.
>
> So no one is saying you have to testify because of a plea bargain, we're saying you have to testify because that's what the law requires. You were properly subpoenaed. There is some reason to believe that you have testimony relevant to these proceedings. It's my duty under State law to require that you answer the questions. Tr. 46-47.

{¶22} Tipton proceeded to grudgingly answer a few questions then the following exchange took place:

The Witness: Because why do I have to do this?   And — I got my time already. This is not benefitting me in no circumstances.

* * *

The Court:          You got charged with a crime, you took a plea bargain and got sent to prison.   This has nothing to do with that.

* * *

The Witness: I'm done with this.   I'm done with this.   I got my time, this is not by the benefit of me, so I — I'm done.

* * *

The Court:          Well, sir, I'm ordering you to answer the gentleman's questions.   And when the Court orders you to do something, which you are required to do, then it places you in contempt of court.   Now, I don't have any desire to hold you in contempt of court, what I really desire is that you do what every citizen of our community is called upon to do, when they're under a proper subpoena, and that is to answer the questions. * * * So I'm ordering you to answer the gentleman's question.

The Witness: I don't remember what happened.

* * *

The Court:          Now, can I just make it clear to you, Mr. Tipton, that it is no solution to this solution to this problem for you to give evidence which is not truthful.   That only opens up the opportunity for you to get in more trouble.

Right now we're only talking about the Court holding you in contempt, and being able to punish you summarily for refusing to answer questions put to you.

* * *

So I'm not threatening you with anything of the sort, because I don't bring charges, other than, of course, holding people in direct contempt.   But I'm just — I just want to mention, when I hear you say you won't testify, and then you change it to: Oh, I don't know anything about it, I don't remember, that

doesn't sound like a solution to me, that sounds like a bigger problem than what you start with. So I'm instructing you and I have to, under Ohio law, require that you answer the gentleman's questions. Tr. 55-57.

**{¶23}** In the instant case, the above excerpts do not support Ellis's assertion that the trial court coerced Tipton into testifying in conformity with his police statement. Our review of the record reveals that the trial court repeatedly explained that a subpoenaed witness had a duty to answer the questions posed. In the face of Tipton's stated reason for not wanting to testify, namely that there was no benefit to him, the trial court repeatedly explained that his duty to testify had nothing to do with his plea bargain with the state.

**{¶24}** Despite Ellis's assertions that Tipton's testimony was procured by threats, the trial court specifically told Tipton that it was not threatening him, but just instructing him as required under the law. We find nothing in the above exchange or elsewhere in the record that is indicative of coercion. As such, we find no merit in this assertion. Accordingly, we overrule the first assigned error.

### Sufficiency of Evidence

**{¶25}** In the second assigned error, Ellis argues the state failed to produce sufficient evidence to support his convictions.

**{¶26}** The sufficiency of the evidence standard of review is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus:

> Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

*See also State v. Apanovitch*, 33 Ohio St.3d 19, 23, 514 N.E.2d 394 (1987); *State v. Davis*, 49 Ohio App.3d 109, 113, 550 N.E.2d 966 (1988).

**{¶27}** *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

**{¶28}** In the instant case, both Tipton and Germany testified that they saw Ellis with a gun as they went to and from the gas station. Tipton testified that he heard a shot fired into the air after they passed the second time. Germany testified that he saw someone shoot in the air as they passed. Ellis's own companion, Burnett testified that Ellis was in possession of a handgun when they were near the gas station. All three men, one of which was Ellis's own companion, placed a gun in Ellis's possession in the first shooting incident.

**{¶29}** All three men also placed a gun in Ellis's possession in the second incident, occurring 10-15 minutes after the first, that claimed Hereford's life. Tipton testified that Ellis and his companions arrived at the southern end of East 95th Street and immediately began shooting. Tipton testified that Ellis was shooting at him and that Ellis was using a Dodge Charger as cover from the gunshots he returned. Germany, as well as Burnett,

corroborated Tipton's testimony that Ellis was among the group of men shooting at them on East 95th Street, thus placing a gun in Ellis's possession.

{¶30} We can also conclude from the physical evidence collected that Ellis was in possession of a handgun on East 95th Street and that handgun resulted in Hereford's death. Detective Sowa testified that eight of the shell casings recovered from the scene came from the same 9 mm handgun and the shell casings did not match any of the handguns recovered from the other defendants. Detective Sowa testified that the shell casings were found in a location in a direct line to Hereford's house. Detective Kooser testified that the morgue pellet recovered matched those coming from the same 9 mm hand gun. Pivotally, Burnett, testified that he believed the black handgun Ellis had in his possession was a semiautomatic.

{¶31} Although the evidence is largely circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *In re N.S.*, 8th Dist. Cuyahoga No. 93153, 2010-Ohio-1057, citing *State v. Basham*, 5th Dist. Muskingum No. CT2007-0010, 2007-Ohio-6995. As such, in reviewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact would conclude, from the testimonies of the witnesses and the physical evidence collected, that Ellis, while attempting to cause physical harm or death to the members of the other group, caused Hereford's death. Thus, there exists sufficient evidence to sustain all of Ellis's convictions, except that for aggravated riot.

{¶32} The trial court found Ellis guilty of aggravated riot in violation of R.C. 2917.02(A)(2), that provides that "[n]o person shall participate with four or more others

in a course of disorderly conduct * * * [w]ith purpose to commit or facilitate the commission of any offense of violence * * *."

{¶33} However, it is uncontested that when Ellis participated in the shooting incident on East 95th Street, he did so in the company of three fellow gang members. Because R.C. 2917.02(A)(2) requires the person charged with aggravated riot to have participated with four or more others in a course of disorderly conduct, the state did not meet the basic element of this charge. *See In re Jesse S.*, 129 Ohio App.3d 394, 717 N.E.2d 1143 (6th Dist. 1998). As such, the trial court should not have found Ellis guilty of aggravated riot.

{¶34} Accordingly, we sustain the second assigned error as it relates to the aggravated riot conviction, but overrule the assigned error on the remaining convictions.

## Manifest Weight of Evidence

{¶35} In the third assigned error, Ellis argues his convictions were against the manifest weight of the evidence.

{¶36} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997 Ohio 52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We

went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id.* at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶37}** As discussed in the second assigned error, the state presented sufficient evidence to sustain all of Ellis's convictions, except that for aggravated riot. Nonetheless, Ellis argues, among other things, that the state's witnesses, specifically Tipton's testimony, was not credible.

**{¶38}** However, this court is mindful that the weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. Chavez*, 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraphs one and two of the syllabus.

**{¶39}** Further, because the factfinder has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997). Thus, the decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶40} While acknowledging the presence of testimony from individuals that were also indicted, that pleaded guilty to various charges, and that were serving sentences for their part in the incidents, the logical conclusion from the evidence presented is that the bullet that struck and ultimately killed Hereford was fired from the gun that Ellis was shooting at Tipton. As previously discussed, although several handguns were recovered from the other defendants, none of them discharged the eight shell casings from the unrecovered handgun that fired the morgue pellet removed from Hereford.

{¶41} Thus, despite Ellis's assertion that Tipton's testimony was not credible, the trial court, who had the opportunity to see and hear Tipton and the other witnesses, had the peculiar advantage to competently credit or discount the testimony of a particular witness. Further, as discussed in the first assigned error, Tipton did not even want to testify in the matter. Thus, based on the foregoing, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that the convictions are against the manifest weight of the evidence. Accordingly, we overrule the third assigned error.

## Allied Offenses

{¶42} In the fourth assigned error, Ellis argues the trial court erred in failing to merge the felonious assault charge and the aggravated riot charge. In the second assigned error, we affirmed all of Ellis's convictions except the aggravated riot; consequently this charge renders the fourth assigned error moot.

## Lesser Included Offense

{¶43} In the fifth assigned error, Ellis argues that the trial court erred by convicting him of felonious assault without first considering a conviction for a lesser included offense of aggravated assault. Ellis argues that evidence of the existence of mitigating circumstances that he allegedly acted under the influence of sudden passion brought on by provocation occasioned by Tipton allegedly first firing on him warranted a conviction for the lesser offense.

{¶44} In the instant case, there is no indication in the record that the trial court did not consider the alleged provocation and sudden passion and decided that the evidence was insufficient to convict on the lesser offense of aggravated assault. Nothing in the record indicates that Ellis was under the influence of sudden passion or a sudden fit of rage.

{¶45} The evidence established that Ellis and his fellow gang members trekked from East 89th Street and Buckeye Road over to East 95th Street and Quebec Avenue and immediately started shooting at Tipton and his companions. Ellis and his companion started shooting when they arrived at the southern tip of East 95th Street and continued shooting as they made their way down to almost the middle of the block and ultimately in a direct line to the victim's house. From this evidence, we fail to see when and where Ellis was provoked, thus warranting a consideration of aggravated assault.

{¶46} In a bench trial, a trial court is presumed to know the law and to have considered lesser offenses supported by the evidence. *State v. Rister*, 6th Dist. Lucas No. L-09-1191, 2012-Ohio-516, ¶ 15; *In re D.L.B.*, 12th Dist. Fayette No. CA2011-09-019,

2012-Ohio-3045, ¶ 22-23.  As such, the trial court did not err when it convicted Ellis of felonious assault.   Accordingly, we overrule the fifth assigned error.

## Self-Defense

**{¶47}** In the sixth assigned error, Ellis argues the trial court erred by convicting him of the charges without considering self-defense.

**{¶48}**  Self-defense is an affirmative defense, and thus, the accused has the burden to prove it by a preponderance of the evidence.  *State v. Tabasso*, 8th Dist. Cuyahoga No. 98248, 2012-Ohio-5747, citing  *State v. Smith*, 10th Dist. Franklin No. 04AP-189, 2004-Ohio-6608, ¶ 16.

**{¶49}** Consideration of self-defense is proper when the evidence shows that (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he was in imminent danger of great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid danger.  *State v. Owens*, 8th Dist. Cuyahoga No. 98165, 2012-Ohio-5887, citing *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990).   Further, the elements of self-defense are cumulative and, if the defendant failed to prove any one of the elements by a preponderance of the evidence, he failed to demonstrate that he acted in self-defense.  *Id.*

**{¶50}** In the instant case, nothing in the record supports any consideration of a self-defense claim.  At the outset, Ellis cannot even establish that he was not at fault in creating the situation.  Tipton, Germany, and Burnett testified that Ellis first fired shots on East 89th Street.  After Tipton and Germany fled, Ellis and his companions arrived on

East 95ᵗʰ Street within 10-15 minutes and immediately began shooting. Thus, there is nothing in the record to negate that Ellis was not at fault.

{¶51} Given that the elements of self-defense are cumulative, Ellis, having failed to prove that he was not at fault in creating the situation, has failed to establish that the trial court should have considered self-defense. Accordingly, we overrule the sixth assigned error.

## Trial Court's Review of the Transcript

{¶52} In the seventh assigned error, Ellis argues the trial court erred when it reviewed the transcript testimony before rendering the verdict. In support of his position, Ellis cites *State v. Rogan*, 94 Ohio App.3d 140, 640 N.E.2d 535 (2d Dist. 1994), where the court stated that:

> [A]n authenticated transcript can be used by a jury as a listening aid while playing the tape of a recorded conversation, but the transcript cannot be admitted into evidence. The use of the transcript as a listening aid is permissible only after proper cautionary instructions have been given by the trial court. We conclude that it is within the sound discretion of the trial court to adopt proper procedures to prevent the jury from using the transcript during deliberations.

{¶53} In the instant case, unlike *Rogan*, this was a bench trial. After all the evidence had been presented , the trial court indicated that it had taken 90 pages of handwritten notes, but it wanted to review the testimony of Tipton, Germany, and Burnett.

{¶54} We conclude that the trial court after hearing the testimony of those witnesses, simply wanted to refresh its memory before rendering the verdict. We reminded Ellis that under a well-established Ohio law it is ordinarily presumed that in a

bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appeared to the contrary. *State v. Tate*, 8th Dist. Cuyahoga No. 97804, 2013-Ohio-570, citing *State v. Eley*, 77 Ohio St.3d 174, 181, 1996-Ohio-323, 672 N.E.2d 640 (1996), citing *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987). Nothing in the record before us indicates anything to the contrary. Accordingly, we overrule the seventh assigned error.

### Ineffective Assistance of Counsel

{¶55} In the eighth assigned error, Ellis argues he was denied the effective assistance of counsel.

{¶56} To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

{¶57} When reviewing counsel's performance, this court must be highly deferential and "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 689. To establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.

{¶58} Within this assigned error, Ellis contends he received ineffective assistance when his counsel failed to object to Tipton's alleged hearsay testimony, failed to object

numerous times throughout the trial, failed to impeach certain testimony, and failed to explain the ramification of waiving a jury.

{¶59} In addressing Ellis's claim that counsel failed to explain the ramification of waiving a jury, we note matters pertaining to discussions Ellis had with his trial attorneys are not properly raised in a direct appeal because they are not part of the record. *See State v. Rowe*, 3d Dist. Seneca No. 13-10-14, 2011-Ohio-5739, ¶ 20-27; *State v. Vess*, 6th Dist. Ottawa No. OT-10-038, 2011-Ohio-3118, ¶ 21. Further, the trial court inquired of Ellis about the written waiver he executed and he indicated that he understood that he was waiving a jury trial and would be tried by the bench.

{¶60} The remaining issues Ellis raises with respect to his trial counsel's actions constitute matters of trial strategy. Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel. *State v. Rosa*, 8th Dist. Cuyahoga No. 96587, 2012-Ohio-1042, citing *State v. Conway*, 109 Ohio St.3d 412, 2006 Ohio 2815, 848 N.E.2d 810, ¶ 111.

{¶61} Ellis cites a number of instances that he deems counsel should have objected. However, as the Ohio Supreme Court explained in *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139-140, such tactical decisions do not give rise to a claim for ineffective assistance:

> [F]ailure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness. *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831. * * *

[E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. *Lundgren v. Mitchell* (C.A.6, 2006), 440 F.3d 754, 774. Accord *State v. Campbell* (1994), 69 Ohio St.3d 38, 52-53, 1994-Ohio-492, 630 N.E.2d 339.

{¶62} The record reveals no such failure by Ellis's trial counsel. Ellis has not demonstrated that his trial counsels performance fell below objective standards of reasonable representation or that he was prejudiced as a result. Accordingly, we overrule the eighth assigned error.

{¶63} Judgment affirmed in part, reversed in part, and remanded to the trial court to vacate Ellis's conviction for aggravated riot.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. Case remanded to the trial court for actions consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

SEAN C. GALLAGHER, P.J., and
MARY EILEEN KILBANE, J., CONCUR