[Cite as *State v. Ellis*, 2025-Ohio-4675.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114788 |
| v. | : | |
| LDDARYL ELLIS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 9, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-12-568532-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee*.

Patituce & Associates, LLC, Megan M. Patituce, and Joseph C. Patituce, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant Lddaryl Ellis appeals the trial court's decision denying his petition for postconviction relief. Upon review, we affirm.

{¶ 2} In 2013, following a bench trial, appellant was found guilty of discharge of a firearm on or near prohibited premises, involuntary manslaughter, murder, aggravated riot, and multiple counts of felonious assault, all with attached firearm specifications.[1] The offenses stemmed from a gunfight, which involved two shooting incidents occurring within a short time period, that happened on March 13, 2012, in the vicinity of East 95th Street in Cleveland. The victim, who had been looking through her window at the gunfight, was struck and killed by a bullet that entered her home. Several witnesses testified to seeing appellant with a gun in his hand, which was believed to be a black semiautomatic handgun; to seeing appellant shooting and/or hearing appellant and his companions shooting; and to observing appellant's location on East 95th Street. A detective testified that multiple shell casings that were found in a direct line to the victim's house were from a 9 mm handgun. Those shell casings did not match any of the handguns recovered from the other defendants. Another detective testified that a morgue pellet recovered from the victim's body matched the shell casings fired from the 9 mm handgun, which handgun was never recovered. The morgue pellet contained "seven lands and grooves with a right-hand-twist" that was unique to a Skyy 9 mm pistol. Other testimony and evidence were provided.

{¶ 3} The trial court merged several counts for sentencing purposes and imposed an aggregate sentence of 15 years to life imprisonment to be served after

---

[1] Appellant was acquitted on six other counts.

appellant served two consecutive three-year terms for firearm specifications, for a total of 21 years to life. Appellant's convictions, except for aggravated riot, were affirmed on appeal in *State v. Ellis*, 2014-Ohio-116 (8th Dist.).[2] Further review of the evidence is set forth in that decision. *See id.* As this court observed in *Ellis*, three witnesses placed a gun in appellant's possession and "[w]e can also conclude from the physical evidence collected that Ellis was in possession of a handgun on East 95th Street and that handgun resulted in [the victim's] death." *Id.* at ¶ 28-31.

{¶ 4} In March 2019, appellant filed a petition for postconviction relief pursuant to R.C. 2953.23(A)(1)(a) and (b), and in April 2019, he filed an amended petition. Following responsive briefing and the filing of supplemental authority, the trial court denied appellant's petition as untimely. This appeal followed.

{¶ 5} Appellant's sole assignment of error claims the trial court erred in denying his petition for postconviction relief as untimely.

{¶ 6} Our review of whether the trial court had subject-matter jurisdiction to entertain appellant's petition for postconviction relief is de novo. *See State v. Johnson*, 2024-Ohio-134, ¶ 11, citing *State v. Bethel*, 2022-Ohio-783, ¶ 20. Relative to this matter, for the trial court to have subject-matter jurisdiction to consider an untimely petition for postconviction relief, appellant had to show that he "'was unavoidably prevented from discovery of the facts upon which the petitioner must

---

[2] The aggravated riot conviction was ordered to be vacated because it was uncontested that appellant participated in the shooting in the company of three other gang members, but the charge of aggravated riot required four or more others. *Ellis* at ¶ 33.

rely to present the claim for relief'" and show "'by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty[.]'" *Id.* at ¶ 10, quoting R.C. 2953.23(A)(1)(a) and (b).

{¶ 7} As to the "unavoidably prevented" requirement, "[a] petitioner may make the required showing either by establishing a violation under [*Brady v. Maryland*, 373 U.S. 83 (1963)], or by demonstrating that he was previously unaware of the evidence on which the petition relies and could not have discovered it by exercising reasonable diligence." *Johnson* at ¶ 18. Pursuant to the United States Supreme Court's decision in *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court of Ohio has observed that "criminal defendants have no duty to 'scavenge for hints of undisclosed *Brady* material.'" *Bethel* at ¶ 24, citing *Banks v. Dretke*, 540 U.S. 668, 695 (2004). However, the *Brady* test "is stringent" and "'[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.'" *State v. Jackson*, 57 Ohio St.3d 29, 33 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 109-110 (1976). "*Brady* requires a 'reasonable probability' of a different outcome with the exculpatory evidence, that is, an undermined confidence in the trial result obtained without the exculpatory evidence." *Jackson* at 33, citing *United States v. Bagley*, 473 U.S. 667, 682 (1985).

{¶ 8} The record herein shows that the gunfight in this case occurred on March 13, 2012. A police report noted that Jamar Ensley, who was associated with the gunfight in this case, "had been mentioned in a CCW Arrest incident on April 26, 2012" along with two other individuals and that "[d]uring this incident[,] a SKYY 9 mm caliber pistol . . . was confiscated." The report reflects that a ballistic comparison request was submitted to the lab to have the confiscated Skyy 9 mm pistol compared to the morgue pellet and casings recovered in the homicide investigation. Appellant claims the prosecution failed to include evidence regarding the ballistic testing and comparisons with that firearm during pretrial discovery.

{¶ 9} Following his conviction, appellant eventually obtained documents on March 4, 2018, from the Cleveland Police Forensic Laboratory, which revealed the lab had received and analyzed the Skyy 9 mm pistol that had been seized during the April 2012 incident involving Ensley and two others. However, the ballistic laboratory report that was prepared on September 7, 2012, by James Kooser, the firearms examiner, indicates that a microscopic examination and comparison of the morgue bullet to a test-fired bullet from the submitted Skyy 9 mm pistol revealed "corresponding general rifling characteristics seven (7) lands and seven (7) grooves with a right-hand twist but dissimilar barrel engraved striations." Therefore, Kooser concluded in the report that the submitted weapon "did not fire the morgue bullet." Kooser also concluded from his examination and testing that the submitted weapon "did not fire the crime scene spent cartridge cases." Additionally, in another

referenced report, Kooser found a spent crime-scene bullet that was submitted to be of "no analytical value due to impact with a hard surface."

{¶ 10} Nevertheless, appellant claims that he was unavoidably prevented from discovery of the facts upon which his claim for relief relies. He argues that the State withheld exculpatory evidence pertaining to the confiscated Skyy 9 mm pistol and any scientific tests performed on that firearm. He argues that the dissimilarities with the subject firearm were not expounded upon, and he claims that the State's failure to disclose the report deprived him of the full opportunity to cross-examine Kooser on his conclusion and of the opportunity to obtain an expert to conduct an independent analysis on behalf of the defense. He maintains that he has shown both that a *Brady* violation occurred and that he was previously unaware of the evidence on which his petition relies and could not have discovered it by exercising reasonable diligence. He claims that after years of unsuccessful attempts to obtain information in his case, which efforts are detailed in his petition, he obtained the evidence on which his petition relies.

{¶ 11} The State concedes that a Skyy 9 mm pistol was seized upon a carrying-concealed-weapons arrest incident involving Jamar Ensley and two other individuals on April 26, 2012, which was more than a month after the gunfight that occurred in this case in which witnesses observed Ellis with a firearm. The State also acknowledges that a report was prepared confirming the weapon confiscated during the April 2012 incident with Ensley was operable, but that it was concluded that this weapon "did not fire" the morgue pellet in the underlying homicide because the

recovered Skyy 9 mm handgun contained "dissimilar barrel engraved striations." As argued by the State, "that someone else's gun did not fire [the fatal bullet], or that one of the bullets [from the crime scene] could not be forensically examined, does nothing to change the weight of the evidence against Appellant." The State further argues that the defense was aware the Skyy 9 mm pistol was confiscated upon Ensley's arrest and submitted for forensic testing. The State claims the defense had the opportunity to cross-examine Kooser and could have obtained the information with reasonable diligence.

{¶ 12} Upon review, we find appellant has not demonstrated a *Brady* violation. Appellant offers nothing more than a mere possibility that the undisclosed information might have helped the defense. The ballistic reports on which appellant relies do not show anything inculpatory or exculpatory. The fact that the confiscated weapon had seven land groves with a right-hand twist, which is a common feature of Skyy 9 mm handguns, shows no connection to the murder weapon in this case. In fact, the reports show that the confiscated weapon had dissimilar striations and that it had no connection to the fatal bullet or crime-scene bullets in this case. Appellant's theory that the disclosure of the reports may have led to different testing or conclusions is speculative, and he fails to show any reasonable probability of a different outcome or that there was any failure to disclose material exculpatory evidence. Simply put, the fact that Kooser's reports indicate that a dissimilar Skyy 9 mm pistol was confiscated during a subsequent incident involving Ensley and two others has no bearing upon the evidence against appellant

in this case. It cannot be said that there is an undermined confidence in the trial result or that a *Brady* violation occurred.

{¶ 13} Furthermore, even if appellant could demonstrate that he was previously unaware of the evidence on which his petition relies and could not have discovered it by exercising reasonable diligence, he fails to show by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found him guilty as required under R.C. 2953.23(A)(1). Indeed, the firearms examiner found that the "SKYY 9 mm caliber pistol did not fire the morgue bullet" and, as this court previously determined, "the logical conclusion from the evidence [presented at trial] is that the bullet that struck and ultimately killed [the victim] was fired from the firearm that [appellant] was shooting . . . ." *Ellis*, 2014-Ohio-116, at ¶ 40.

{¶ 14} Having reviewed the record and pertinent law, we conclude that the trial court did not have subject-matter jurisdiction to consider appellant's untimely petition for postconviction relief. We are not persuaded by any of appellant's arguments otherwise. His sole assignment of error is overruled.

{¶ 15} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, A.J., and
EMANUELLA D. GROVES, J., CONCUR