[Cite as *State v. Vickers*, 2013-Ohio-1337.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97365**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIAM VICKERS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-513543

**BEFORE:**   Blackmon, J., Stewart, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**   April 4, 2013

**ATTORNEYS FOR APPELLANT**

Timothy Young
State Public Defender

By:   Francisco E. Luttecke
Assistant State Public Defender
250 East Broad Street,   Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Brett Kyker
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant William Vickers appeals his convictions and assigns the following errors for our review:

> **I. Defendant-Appellant's burglary conviction violated his state and federal constitutional rights to due process of law, because the evidence presented at trial was insufficient to establish all the requisite elements of that offense.**
>
> **II. The trial court denied Defendant-Appellant his state and federal constitutional rights to a due process of law when it erred in admitting evidence of Defendant-Appellant's prior bad acts for purpose of "identity."**
>
> **III. The trial court denied Defendant-Appellant his state and federal rights to a fair trial and due process of law when it improperly instructed the jury by misstating the law on unanimity as, "only half, after weighing all the evidence, the jury must be convinced of the guilty [sic] of the defendant beyond a reasonable doubt."**
>
> **IV. The trial court's error in allowing the burglary charge to reach the jury, admitting improper and prejudicial propensity evidence, and misstating the law in its jury instructions cumulatively denied Defendant-Appellant his state and federal rights to a fair trial and due process of law.**

{¶2} Having reviewed the record and pertinent law, we affirm Vickers's convictions. The apposite facts follow.

{¶3} Between mid-June and the first week of July 2008, four residents of the city of Cleveland Heights, Ohio reported cellular phones, wallets, and small amounts of cash missing from their homes. In the early morning of July 6, 2008, Cleveland Heights

police officers arrested Vickers when he approached and offered to help, while they were assisting a young lady that was locked out of her car. At the time of his arrest, Vickers was in possession of a cellular phone that was later identified as belonging to one of the residents of the missing items.

{¶4} On July 22, 2008, the Cuyahoga County Grand Jury indicted Vickers on four counts of burglary, five counts of theft, as well as one count each of tampering with evidence, assault of a peace officer, resisting arrest, escape, and criminal damaging. On July 25, 2008, Vickers pleaded not guilty at his arraignment. Numerous pretrials were followed. On January 12, 2009, a jury trial commenced. Prior to trial, Vickers waived his right to a jury trial on the escape charge.

## Jury Trial

{¶5} The state presented the testimony of 18 witnesses. The testimony established that during a three week period, a string of nighttime burglaries took place in an affluent neighborhood in Cleveland Heights. The victims, Mark and Kathryn Adams, Mary Perotti, Gina Gunning, and Kelly Ansboury all testified that they were in the habit of leaving their doors unlocked. All five victims reported that either their cell phones and cash or both were taken from the kitchen area after they had retired to bed prior to or around midnight.

{¶6} Mark and Kathryn Adams testified that when they awoke on the morning of July 2, 2008, they noticed a screen on one of their kitchen windows was ajar. On closer inspection, they discovered slices in the screen near the latches, but after doing a cursory

check of the kitchen area, they did not notice anything missing. However, later that day, Kathryn Adams discovered that her cell phone and $80 were missing from her purse.

{¶7} Mark and Kathryn Adams immediately contacted the Cleveland Heights police department, who responded to their residence, dusted the house for fingerprints, but found none. In addition, Kathryn Adams contacted AT&T, her cell phone carrier, and discovered that several calls had been made from her phone starting at 12:31 a.m. that morning.

{¶8} Mary Perotti testified that on June 18, 2008, she was unable to locate her cell phone that she last saw on the kitchen table. Perotti, believing that one of her toddlers had misplaced the phone, continued to look around the house for almost a week, but was unable to locate it, and ultimately replaced it with another one. Perotti testified that in late July or early August 2008, the Cleveland Heights police contacted her about possible fraudulent use of her phone. Perotti was alerted to two phone calls that were made from her phone at approximately 2:30 a.m. on June 18, 2008. Perotti did not recognize the numbers.

{¶9} Gina Gunning testified that she and her husband went to bed around 11:00 p.m. on June 30, 2008, and they awoke the next morning around 6:00 a.m. Gunning stated that later that morning when she looked in her purse, she discovered that money and credit cards were missing from her wallet. She contacted her husband, who also discovered money was missing from his wallet. Gunning's husband also indicated that

he had noticed that the kitchen window was ajar when he was preparing to leave for work early that morning.

{¶10} Kelly Ansboury testified that she had used her cell phone around 8:00 p.m. on July 5, 2008, to call her mother while she was walking the family dog. Ansboury stated that she placed the cell phone on the kitchen counter after returning home and that she and her husband retired to bed around midnight. Ansboury testified that she could not locate her cell phone the following morning. When she checked her purse, $38 in cash was missing. Ansboury stated that around noon, Cleveland Heights police officers came to advise her that they had arrested a man who had her cell phone in his possession.

{¶11} The testimony at trial also established that three individuals, Kenneth Thompson, Deanna DeMaris, and Mary Beth Byrne received phone calls from Vickers on cell phones that were reported missing from the aforementioned victims' homes. All calls were placed in the early morning, shortly after midnight. Thompson testified that Vickers was his cousin and that he received a call from him in the early hours of July 2, 2008, asking for a place to sleep.

{¶12} Byrnes testified that she has known Vickers since the early 1980s and that at one point he stayed with her for about a month. Byrnes testified that on June 18, 2008, at approximately 2:30 a.m., she received a call from an unrecognized number that hung up before she could answer. Byrnes hit redial, but no one answered. Byrnes periodically dialed the number, and on June 26, 2008, Mary Perotti answered.

**{¶13}** DeMaris, who dated Vickers in the early 1980s, testified that he would contact her periodically over the years. DeMaris received a phone call from Vickers on July 2, 2008, from a cell phone that belonged to Kathryn Adams.

**{¶14}** In the middle of trial, Vickers pleaded guilty to the single count of escape. At the close of the evidence, the jury acquitted Vickers of one count each of burglary, theft, tampering with evidence, and criminal damaging, but found him guilty of the remaining charges. On February 17, 2009, the trial court sentenced Vickers to an aggregate prison term of ten years.

## Sufficiency of Evidence

**{¶15}** In the first assigned error, Vickers argues the state's evidence was insufficient to sustain his conviction.

**{¶16}** A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the state has met its burden of production at trial. *State v. Givan*, 8th Dist. No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id.

**{¶17}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶18}** In the instant case, although the jury returned guilty verdicts on several other charges, Vickers primarily attacks the three burglary convictions. Vickers was convicted of burglary in violation of R.C. 2911.12(A)(2), which states:

> **No person, by force, stealth, or deception, shall do any of the following:**
>
> ** * * * Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]**

**{¶19}** Vickers contends that the burglary convictions cannot be sustained; specifically because the state presented no physical evidence, such as fingerprints, to establish that he committed a trespass in any of the properties. Vickers maintains that, at most, the evidence presented established that he committed theft offenses. In fact, Vickers maintains he was a "neighborhood fence" and should only have been charged with receiving stolen property. Vickers suggests all of the evidence was circumstantial and/or based upon inferences.

**{¶20}** However, we note that there is no distinction in the particular weight or way of evaluating the evidence, whether it is direct or circumstantial. *State v. Simmons*, 8th Dist. No. 97557, 2012-Ohio-3454, citing *Jenks* at paragraph one of the syllabus. Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances, certain facts can only be established by circumstantial evidence. *Id*.

**{¶21}** A review of the record reveals that at the time of Vickers's arrest, which was shortly after 1:00 a.m., he was in possession of Ansboury's phone along with two

wads of cash amounting to $41 and $38, respectively. Ansboury had placed a call to her mother around 8:00 p.m., placed the phone on the kitchen counter, and then retired to bed around midnight. Ansboury also stated that she and her husband normally leave their doors unlocked. She wasn't aware that her phone was missing until the police told her.

{¶22} Given that Vickers was in possession of Ansboury's cell phone within an hour after Ansboury retired to bed, a rational trier of fact could conclude that it was more likely that he obtained the cell phone after entering the home rather than by virtue of being a "neighborhood fence."

{¶23} Likewise, the evidence that Vickers placed calls to Thompson, Byrne, and DeMaris, between midnight and the break of dawn, using cell phones belonging to Adams and Perotti who had respectively reported them missing shortly after the calls were made, supports the conclusion that it was more likely than not that Vickers trespassed into the respective houses.

{¶24} All three phones were used to call individuals known to Vickers and all three calls were made between midnight and 3:00 a.m. on the day they were discovered missing. After viewing the evidence in a light most favorable to the prosecution, the above evidence, if believed, would support the conclusion that Vickers trespassed into the property and therefore was guilty of burglary. As such, any rational trier of fact would have found the essential elements of burglary proven beyond a reasonable doubt. Accordingly, we overrule the first assigned error.

## Other Acts Evidence

**{¶25}** In the second assigned error, Vickers argues the trial court erred in admitting evidence of his involvement prior burglaries. Specifically, Vickers challenges the trial court's failure to exclude testimony about a 2003 interview with Detective David Bartee in which Vickers admitted having committed other burglaries in the same neighborhood in Cleveland Heights. The state counters that the evidence was properly admitted to prove identity.

**{¶26}** We review the admission of evidence under an abuse of discretion standard. *State v. Driggins*, 8th Dist. No. 98073, 2012-Ohio-5287, citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). "Abuse of discretion" connotes more than error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶27}** Pursuant to Evid.R. 404(B),

> **[E]vidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character as to criminal propensity. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.** *Id.*

**{¶28}** Rule 404(B) is codified in R.C. 2945.59, which provides that:

> **[I]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding**

**that such proof may show or tend to show the commission of another crime by the defendant.**

{¶29} Recently, in *State v. Williams*, 2012-Ohio-5695, 2012 Ohio LEXIS 3100, the Ohio Supreme Court revisited and addressed this very issue. The Ohio Supreme Court concluded that Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but does not preclude admission of that evidence for other purposes, e.g., to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

{¶30} At trial, Detective Bartee testified that in an interview in 2003, Vickers admitted to burglarizing five houses in the same neighborhood in Cleveland Heights. The burglaries, like the instant case, took place over a span of approximately three weeks. Vickers gained entrance through unlocked windows or doors and took cell phones and cash from the kitchen areas. Detective Bartee testified that Vickers indicated in a written statement that he only committed the burglaries between 12:00 a.m. and 5:00 a.m.

{¶31} In the instant case, the burglaries took place over a similar time span, in the same neighborhood, and with similar items taken. The instant burglaries also involved entry to the homes in a similar fashion. In addition, the instant burglaries all occurred at night. Interestingly, Detective Bartee testified that the vast majority of burglaries in Cleveland Heights occur during the day and involve forced entry.

**{¶32}** Here, in accord with the Ohio Supreme Court's recent pronouncement in *Williams supra*, Detective Bartee's testimony was pertinent to establish identity utilizing the striking similarities between the 2003 string of burglaries in the same neighborhood. As such, the trial court did not abuse its discretion in admitting Detective Bartee's testimony regarding Vickers's involvement in the 2003 burglaries. Accordingly, we overrule the second assigned error.

### Jury Instructions

**{¶33}** In the third assigned error, Vickers argues he was prejudiced by the trial court's incorrect jury instructions. Specifically, Vickers argues he was prejudiced when the trial court stated: "the law requires that only half, after weighing all the evidence, the jury must be convinced of the guilt of a defendant beyond a reasonable doubt." Tr. 503.

**{¶34}** We note, the record reflects that Vickers failed to object to the trial court's statement. Crim.R. 30(A) provides in pertinent part:

> **On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.**

**{¶35}** Pursuant to this rule, the failure to object to a jury instruction in a timely manner generally constitutes a waiver of any claimed error relative to the instructions. *State v. Majid*, 8th Dist. No. 96855, 2012-Ohio-1192, ¶ 72, citing *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1st Dist.1983), syllabus.

**{¶36}** Under Crim.R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they are not brought to the attention of the trial court. *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

**{¶37}** Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Bell*, 8th Dist. No. 97123, 2012-Ohio-2624, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). An error does not rise to the level of plain error unless, but for the error, the outcome of the trial would have been different. *Long* at paragraph two of the syllabus.

**{¶38}** In the instant case, despite the complained of statement cited above, the trial court later stated: "Once again, because this is a criminal case, the law requires that all 12 of you be in agreement before you can consider that you have reached a verdict." The trial court then went on to explain to the jury that they would have verdict forms reflecting each count in the deliberation room, that the forms were self explanatory, and that the form must be signed by all twelve jurors.

**{¶39}** When a reviewing court examines jury instructions, a single instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge. *State v. Ramey*, 4th Dist. No. 05CA2865, 2006-Ohio-3548, citing *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52. Thus, the reviewing court must consider the jury instructions "as a whole" and determine whether the charge probably misled the jury in a matter materially affecting the complaining party's

substantial rights. *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990); *see also State v. Noggle*, 140 Ohio App.3d 733, 750, 2000-Ohio-1927, 749 N.E.2d 309 (3d Dist.). Further, courts presume that juries obey the instructions given to them. *State v. Ahmed* 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637.

**{¶40}** Here, the jury instructions, when viewed as a whole, indicates that the trial court rehabilitated the earlier misstatement relative to the required unanimity in criminal cases. As such, we can see no evidence that Vickers was prejudiced by the earlier statement. Accordingly, we overrule the third assigned error.

## Cumulative Errors

**{¶41}** In the fourth assigned error, Vickers argues that cumulative errors denied him a fair trial.

**{¶42}** The "cumulative error" doctrine states that "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the numerous instances of the trial court error does not individually constitute cause for reversal." *State v. Rosa*, 8th Dist. No. 96587, 2012-Ohio-1042, citing *State v. Garner*, 74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623. However, "[t]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *State v. Hill*, 75 Ohio St.3d 195, 212, 1996-Ohio-222, 661 N.E.2d 1068 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

{¶43} As we have previously discussed, the trial court did not abuse its discretion in admitting testimony regarding Vickers's admitted involvement in a string of 2003 burglaries in the same neighborhood in Cleveland Heights. We also found that the trial court's initial misstatement in the jury instructions was cured by its later more detailed instructions regarding the unanimity of jury verdicts in criminal cases. Thus, this complained of misstatement did not adversely affect the outcome of Vickers's trial.

{¶44} As such, we find no merit to Vickers's allegation that these perceived errors cumulatively affected his right to a fair trial. Accordingly, we overrule the fourth assigned error.

{¶45} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

PATRICIA ANN BLACKMON, JUDGE

MELODY J. STEWART, A.J., and
MARY EILEEN KILBANE, J., CONCUR