[Cite as *Cleveland v. Taylor*, 2021-Ohio-584.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109371 |
| v. | : | |
| LAVELL TAYLOR, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 4, 2021

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2019 CRB 014948

---

### *Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, Aqueelah A. Jordan, Chief Prosecuting Attorney, and Leslie C. Weston, Assistant Prosecuting Attorney, *for appellee.*

Anzelmo Law and James A. Anzelmo, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant Lavell Taylor brings this appeal challenging his convictions and sentence for endangering children and criminal damaging. Appellant argues that the trial court lacked jurisdiction to convict him of

endangering children, the trial court violated his right to confrontation, his convictions were not supported by sufficient evidence and are against the manifest weight of the evidence, and that the trial court erred in ordering appellant to pay $400 in restitution. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant matter arose from an incident that occurred on August 28, 2019, between appellant, his son M.I.,[1] and the mother of his son, I.D. The son was ten years old at the time of the incident. It is undisputed that while at a restaurant, appellant was looking through the son's phone and discovered pornographic photos or pornographic websites that had been accessed by the son. The pornographic content was homosexual. As set forth in further detail below, the parties dispute events that transpired following appellant's discovery.

{¶ 3} Appellant was upset about his observations. He confronted his son, and after taking his son to I.D.'s house, confronted I.D. about his discovery. Appellant was angry that I.D. knew about the issue, either the pornography on the cell phone or the son's sexual orientation, but had not told him. When appellant arrived at I.D.'s house, he was yelling at I.D. and calling the son names, including a "f[*****]."

{¶ 4} Appellant was also arguing with, yelling, and swearing at I.D. I.D. asked appellant to leave several times, but appellant did not comply. The altercation

---

[1] D.O.B. December 4, 2008.

between appellant and I.D. escalated from a verbal argument to a physical altercation.

{¶ 5} At some point during the altercation, I.D. threw water in appellant's face. She later threw the empty water bottle at appellant. I.D. attempted to enter her house, but appellant prevented her from doing so. Appellant shoved I.D. into the house. I.D. grabbed a hammer in the kitchen and ran outside towards appellant. At this point, appellant was already in his vehicle. He backed out of the driveway and left the scene. Later the same day, I.D. reported the altercation to the police.

{¶ 6} On September 3, 2019, appellant was charged in a three-count complaint for his involvement in the August 28, 2019 altercation. Appellant was charged with (1) domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25, (2) endangering children, a first-degree misdemeanor in violation of Cleveland Codified Ordinances ("CCO") 609.04, and (3) criminal damaging or endangering, a second-degree misdemeanor in violation of CCO 623.02.

{¶ 7} On September 4, 2019, following a hearing, the trial court issued an ex parte temporary protection order under which I.D. and the child were listed as protected persons. Appellant pled not guilty during his September 21, 2019 arraignment.

{¶ 8} Trial commenced on November 6, 2019. I.D. testified on behalf of the prosecution. Appellant testified on behalf of the defense.

**I.D.'s Trial Testimony**

{¶ 9} I.D. testified that appellant is the father of M.I., and that she has another son that was two-years-old at the time of the incident. I.D. was not in a relationship with appellant at the time of the incident. They were coparenting their son, M.I.

{¶ 10} Appellant picked up their son from I.D.'s mom's house. I.D. did not expect appellant to pick their son up from her mom's house. I.D. contacted appellant and asked when he was dropping her son off. Appellant asserted that they were going to have a conversation when they arrived at I.D.'s house. I.D. was sitting on the porch with her younger son. I.D. provided the following account of what transpired when appellant arrived at her house: "[Appellant] pulls up about maybe an hour, 45 minutes after I got off the phone with him. He proceeded to get out the car in my driveway and says, * * * 'So you f[*****]g knew.' * * * 'You knew. You f[*****]g knew.' * * * 'My son's a f[*****]g f[**].'" (Tr. 7.)

{¶ 11} I.D. told appellant he needed to calm down. I.D. testified that she had seen "gay photos in [her] son's phone[.]" She thought she deleted the photos, but appellant saw the content when he went through the son's cell phone.

{¶ 12} I.D. testified that she informed appellant that she already addressed the issue and that she discussed the issue with her mother and appellant's mother.[2] Appellant was mad that I.D. knew about either the pornographic content, the son's

---

[2] I.D. did not specify whether the "issue" to which she was referring was the pornographic content on the son's cell phone or the son's sexual orientation.

sexual orientation, or both, and did not tell him. I.D. explained that she did not discuss the photos with appellant because "I already knew what type of person he was when it came to issues like that."

{¶ 13} Appellant and I.D. got into an argument at her house. She asked him to leave because he was calling the son names in front of I.D.'s younger son. The older son "broke down in tears and ran into the house[.]" (Tr. 8.) The son had been sitting in the car for the "first half" of the argument between appellant and I.D. Then, appellant told the son to get out of the car. The son was on the porch and started crying, at which point I.D. told him to take the two-year-old inside.

{¶ 14} Appellant and I.D. continued to argue. She asked him to leave several times. Although appellant began to leave a couple of times, he ended up coming back and continuing to argue with I.D.

{¶ 15} Appellant was calling I.D. names, including b***h, and he was calling the son names, including "f[**]." (Tr. 9.) I.D. kept asking appellant to leave but he would not. I.D. was holding a water bottle and threw the water at appellant. He still would not leave, so she threw the empty water bottle at him.

{¶ 16} I.D. began walking towards her house and she tried to enter the house through the front door. Appellant threatened her, saying, "I should punch you in your f[*****]g face." (Tr. 10.) I.D. tried to close the door behind her, but appellant grabbed the door handle and pushed I.D. back into her house, causing her to fall back approximately three feet. After appellant pushed I.D. into the house, he closed the front door. I.D. was upset and she ran towards the front door. She grabbed

something to try and hit appellant with. She was unable to open the front door. As a result, she ran through the house and exited through a side door.

{¶ 17} Before going back outside, she grabbed a hammer that was in the kitchen. She explained that she grabbed the hammer because "I wanted him to leave, just to try [to] get him to leave." (Tr. 12.) Appellant got into his vehicle and pulled out of the driveway.

{¶ 18} After appellant left, I.D. contacted appellant and inquired where her son's cell phone was. Appellant advised her that the son's phone was "gone" and "over with." Appellant stated that he broke the phone. I.D. testified at trial that the son has an "LG Aristo" cell phone from T-Mobile. I.D. was still paying for the phone at the time of the incident. When asked about the value of the phone, I.D. testified, "[w]ith all the accessories and everything I had on it and stuff I bought for him, it was like $400, three, $400." (Tr. 13.)

{¶ 19} After appellant left, I.D. went into the house and found her sons. The older son was in a room crying. I.D. testified, over defense counsel's objection, that "I grabbed my son which I had a talk to in the room because he was under his covers in tears crying saying that his daddy didn't love him. And he proceeded to tell me that [appellant] grabbed him by his arm, threw him on the ground and told him that he is not a part of his family, he does not have f[***] in his family." (Tr. 15.)

{¶ 20} I.D. testified that she talked to her son in the room and calmed him down. After she calmed him down, they gathered themselves and went to the police

station to file a report.  They went to the police station approximately 20 minutes after the altercation ended.

{¶ 21} I.D. testified on cross-examination that when she tried to enter her house, she never made it all the way inside because appellant grabbed the door before she entered the residence.  She acknowledged that she tried to open the front door to hit appellant after he pushed her inside.  When she was unable to open the front door to do so, she locked the door and ran out of the house through a back door.  After she grabbed the hammer from the kitchen, she ran towards appellant who was in his vehicle pulling out of her driveway.

{¶ 22} On redirect examination, I.D. confirmed that the altercation between her and appellant did not start when she threw water on appellant.  Rather, appellant had been "in [her] face" before she threw water on him.  I.D. opined that she asked appellant to leave five or six times before she first threw water at him.  He began to leave approximately three times, but ended up coming back to continue the argument.  After she threw water at appellant, they continued to argue for another five to ten minutes.  Then, she threw the empty water bottle at appellant and attempted to go inside the house.

{¶ 23} Following I.D.'s testimony, defense counsel moved for a Crim.R. 29 judgment of acquittal.  Regarding the endangering children offense, the city argued that the defense's motion should be overruled based on appellant calling his son a "f[*****]" and appellant's conduct of bringing the fight to I.D.'s house and fighting in front of the two children.  (Tr. 28.)  Regarding the criminal damaging offense, the

city argued that the motion should be overruled based on I.D.'s testimony that appellant told her he destroyed the son's phone and that she never got the phone back from appellant. (Tr. 28.) The trial court denied defense counsel's motion.

**Appellant's Trial Testimony**

{¶ 24} Appellant testified at trial that he picked his son up from I.D.'s mom's house. They went to his brother's restaurant and were hanging out. He had the son's phone and saw that the son had been visiting "several porn sites for months." Appellant testified that he talked to the son about it, and that they "just had a conversation."

{¶ 25} Appellant knew his son was lying because the son told him that the site was accessed within the last couple of weeks, rather than months. Appellant confronted the son about the lie, telling him that the websites dated back six or seven months. The son continued to lie.

{¶ 26} Appellant asserted that he was "already on the ground" with his son. Thereafter, appellant testified,

> And I did proceed to whip my son with a belt because, I mean, he was lying to me about what was going on. I never once called my son a f[*****] at all. I was explaining to him. And my son is very, of course — of course, everybody don't want his father see that, I guess. So he was scared. And I was talking to him normally like anybody would do with their son. He — of course, we proceeded to go to his mom's house.

(Tr. 31.)

{¶ 27} Appellant left the restaurant with the son and they went to I.D.'s house. He got out of the car and the son stayed in the car. He proceeded to talk to

I.D. about the internet sites. I.D. told him that she already knew about the websites and she spoke to appellant's mom about the issue.

{¶ 28} Initially, he was conversing with I.D. The conversation escalated into an argument. Appellant provided the following account of the argument with I.D.:

> As the argument went on, I guess she got offended by some of this [sic] things I called her. I didn't say called her out her name. I called her miserable because she was mad at the fact that I had a child and she wouldn't let me see my son for all that time. So upon that she was already standing.
>
> I was on the ground. I wasn't even on the steps. I was on the — on the grass. She was standing on her steps. That's when she poured water on me once, poured it on me again. It was still water on there, and then she hit me with the water bottle. That's when I got hit with the water bottle.
>
> She was standing up at that time. I had my head down walking up the steps approaching her. Upon me looking and seeing what was going on is when I seen [sic] her with the broom in her hand and the door was open. My son was — my son was already — he's outside.
>
> [My son] was in the doorway. The door was wide open. There was no grabbing of the door. She was in the doorway. And when she approached me, I put my hands up to defend myself as if somebody would do when somebody's approaching them. So, of course, she's a lot less — weigh a lot less than me.
>
> [I.D.] fell. She fell back, and I shut the door because she was trying to get up and come to me. So I shut the door and that's when I left. There was no going back and forth in the car or nothing.

(Tr. 33-34.)

{¶ 29} Appellant explained that he shut the front door on I.D. because she was coming to attack him. He denied locking the door or preventing I.D. from opening it. He was laughing when he left because "[I.D.] approached me and she fell." (Tr. 35.)

**{¶ 30}** When appellant started pulling out of the driveway, I.D. came outside with a hammer. He continued driving away from the residence.

**{¶ 31}** On cross-examination, appellant testified that prior to the August 28 incident, appellant had not seen his son for approximately one month. He alleged that I.D. prevented him from seeing the son.

**{¶ 32}** Appellant was upset about what he saw on his son's phone. He felt that someone should have spoken to him about the issue.[3] Appellant stated that he was not angry when he called I.D. and told her that they needed to talk. He explained that he was disappointed, not angry. Appellant testified that he did not became angry until he was hit with the water bottle I.D. threw at him. He did not approach I.D. until he was hit with the water bottle. Appellant confirmed that he was mad at I.D. for not informing him about the issue involving the websites.

**Verdict and Sentence**

**{¶ 33}** At the close of trial, the trial court found appellant not guilty of domestic violence, and guilty of endangering children and criminal damaging. On December 2, 2019, the trial court sentenced appellant to 180 days in jail on the endangering children count, with 176 of the 180 days suspended. The trial court sentenced appellant to a suspended 90-day jail term on the criminal damaging count. The trial court placed appellant on three years of active probation with the following terms: complete 100 hours of community work service, pay $400 in

---

[3] Appellant did not specify whether the "issue" to which he was referring was the pornographic content on the son's cell phone, the type of pornographic content on the cell phone (homosexual content), or the son's sexual orientation.

restitution to I.D., complete a substance abuse and alcohol assessment, and complete the domestic intervention education training program.

{¶ 34} On December 26, 2019, appellant filed the instant appeal challenging the trial court's judgment. Appellant assigns five errors for review:

I. The trial court lacked jurisdiction to convict [appellant] of child endangerment.

II. The trial court erred by allowing I.D. to testify about N.'s out of court statements, in violation of [appellant's] right to confrontation under the Sixth Amendment to the United States Constitution.

III. [Appellant's] convictions are based on insufficient evidence, in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 & 16, Article I of the Ohio Constitution.

IV. [Appellant's] convictions are against the manifest weight of the evidence in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 & 16, Article I of the Ohio Constitution.

V. The trial court erred by ordering [appellant] to pay $400 in restitution because the evidence fails to support the amount of that order.

## II. Law and Analysis

### A. Jurisdiction

{¶ 35} In his first assignment of error, appellant argues that the Cleveland Municipal Court lacked jurisdiction to convict him of child endangerment. In support of his argument, appellant contends that he was charged with and convicted of CCO 609.04(b) and R.C. 2919.22(B)(1) for "'beating' [his son] after [appellant] caught [his son] looking at pornography." Appellant's brief at 4. Based on his assertion that he was convicted of CCO 609.04(b) and R.C. 2919.22(B)(1), appellant

contends that the juvenile court, not the municipal court, had exclusive jurisdiction over the matter pursuant to R.C. 2151.23(A)(1) and (6).

{¶ 36} As an initial matter, we note that appellant did not raise his jurisdictional argument in the trial court. However, "[s]ubject-matter jurisdiction may not be waived or bestowed upon a court by the parties to the case. *State v. Wilson*, 73 Ohio St.3d 40, 46, 652 N.E.2d 196 (1995). It may be raised sua sponte by an appellate court. *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 84, 661 N.E.2d 728 (1996)." *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997).

{¶ 37} CCO 609.04(b) provides, "[n]o person shall abuse a child under eighteen (18) years of age or a mentally or physically handicapped child under twenty-one (21) years of age." The language of CCO 609.04(b) is set forth in R.C. 2919.22(B)(1), which provides, "[n]o person shall [abuse a child] under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age[.]"

{¶ 38} R.C. 2151.23, governing the jurisdiction of the juvenile court, provides, in relevant part,

> (A) The juvenile court has exclusive original jurisdiction under the Revised Code as follows:

> (1) Concerning any child who on or about the date specified in the complaint, indictment, or information is alleged to have violated section 2151.87 of the Revised Code or an order issued under that section or to be a juvenile traffic offender or a delinquent, unruly, abused, neglected, or dependent child and, based on and in relation to the allegation pertaining to the child, concerning the parent, guardian,

or other person having care of a child who is alleged to be an unruly child for being an habitual truant or who is alleged to be a delinquent child for violating a court order regarding the child's prior adjudication as an unruly child for being an habitual truant;

* * *

(6) To hear and determine all criminal cases in which an adult is charged with a violation of division (C) of section 2919.21, *division (B)(1) of section 2919.22*, section 2919.222, division (B) of section 2919.23, or section 2919.24 of the Revised Code, provided the charge is not included in an indictment that also charges the alleged adult offender with the commission of a felony arising out of the same actions that are the basis of the alleged violation of division (C) of section 2919.21, *division (B)(1) of section 2919.22*, section 2919.222, division (B) of section 2919.23, or section 2919.24 of the Revised Code[.]

(Emphasis added.)

{¶ 39} Appellant directs this court to *State v. Middleton*, 2d Dist. Greene No. 2019-CA-22, 2020-Ohio-1308. In *Middleton*, the Second District held that the defendant's child endangerment conviction was void and must be vacated because the charge was brought in municipal court and the juvenile court had exclusive jurisdiction over the case pursuant to R.C. 2151.23(A)(6). *Id.* at ¶ 29-31. Appellant's reliance on *Middleton* is misplaced.

{¶ 40} In *Middleton*, the defendant was charged with child endangerment in violation of R.C. 2919.22(B)(1). In the instant matter, the city argues that appellant was charged with child endangerment in violation of CCO 609.04(a) and R.C. 2919.22(A), not 2919.22(B)(1), and as a result, the Cleveland Municipal Court had jurisdiction over the proceedings.

{¶ 41} After reviewing the record, we agree with the city and find that the juvenile court did not have exclusive jurisdiction over the proceedings. Accordingly, the municipal court had jurisdiction to preside over the city's prosecution.

{¶ 42} First, appellant's reliance on R.C. 2151.23(A)(1) is misplaced because the matter did not involve any allegations involving appellant's son. It was appellant's conduct, not the conduct of his son, that was at issue in the proceedings.

{¶ 43} Furthermore, appellant's assertion that he was convicted of CCO 609.04(b) and R.C. 2919.22(B)(1) is unsupported by the record. The city's complaint charged appellant with endangering children in violation of CCO 609.04(a). The language of CCO 609.04(a) is set forth, verbatim, in R.C. 2919.22(A). Therefore, the provision set forth in R.C. 2151.23(A)(6) giving the juvenile court exclusive jurisdiction over criminal cases involving violations of R.C. 2919.22(B)(1) is inapplicable.

{¶ 44} Based on the foregoing analysis, we find that the municipal court had jurisdiction over the criminal proceedings. Appellant's first assignment of error is overruled.

## B. Right to Confrontation

{¶ 45} In his second assignment of error, appellant argues that the trial court erred by allowing I.D. to testify, over defense counsel's objection, about the son's out-of-court statements. Appellant contends that the trial court's ruling violated his constitutional right to confrontation.

{¶ 46} As noted above, I.D. testified that after appellant left her house, she went into the house and found her sons. The older son was in a room crying. I.D. testified, "I grabbed my son which I had a talk to in the room because he was under his covers in tears crying saying that his daddy didn't love him. And he proceeded to tell me that [appellant] grabbed him by his arm, threw him on the ground and told him that he is not a part of his family, he does not have f[**]s in his family." (Tr. 15.)

{¶ 47} Defense counsel raised a general, unspecified objection to I.D.'s testimony about the son's statements. The city argued that the statements were admissible as an excited utterance. The trial court overruled defense counsel's objection.

{¶ 48} In support of his argument that the trial court erred by permitting I.D.'s testimony, appellant directs this court to *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Appellant appears to argue that the child's statements were testimonial under the *Crawford* standard because the child made the statements to I.D. before she contacted the police to press charges against appellant. As a result, appellant contends that "I.D. made the statements [to police] to establish or prove events potentially relevant to later criminal prosecution." Appellant's brief at 7. Appellant emphasizes that the test is whether an objectively reasonable person would believe the statements were testimonial, and as a result, the son's young age is inconsequential in the *Crawford* analysis.

**{¶ 49}** As an initial matter, we note that the relevant inquiry is whether the son's statements to I.D. were testimonial — not whether the statements that I.D. made to the police at the time she was filing the report were testimonial.

**{¶ 50}** "The Sixth Amendment to the United States Constitution provides that 'in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him [or her].'" *State v. Barnes*, 8th Dist. Cuyahoga Nos. 108857, 108858, and 109321, 2020-Ohio-3184, ¶ 14.

> In *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment to the United States Constitution permits testimonial statements of witnesses absent from trial where the declarant is unavailable, only where the defendant has had a prior opportunity to cross-examine. Testimonial statements include statements "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52. *See also Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency." *Davis* at 823. *See also State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 26.

*State v. Renode*, 8th Dist. Cuyahoga No. 109171, 2020-Ohio-5430, ¶ 24,

**{¶ 51}** In *Crawford*, the Supreme Court found that at a minimum, testimonial evidence includes prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and statements made during police interrogations. *Id.* at 68.

**{¶ 52}** The Confrontation Clause does, however, not bar the admission of hearsay statements that are not testimonial. *Davis* at 823; *State v. Siler*, 116 Ohio

St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 21. The Confrontation Clause is not implicated by, and need not be considered when nontestimonial hearsay is at issue. *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

{¶ 53} Appellant also appears to argue that the child's statements were not admissible under the excited utterance exception to the hearsay rule because they were made after appellant left the scene.

> Evid.R. 803 sets forth certain exceptions to the rule against hearsay, including the "excited utterance" exception. Evid.R. 803(2). In order for a statement to be admissible as an excited utterance, four prerequisites must be satisfied: (a) the occurrence of an event startling enough to produce a nervous excitement in the declarant that stills his reflexive faculties so that his declarations are spontaneous and the unreflective and sincere expressions of his impressions and beliefs; (b) a statement made while still under the stress of excitement caused by the event; (c) a statement related to the startling event; and (d) the declarant had an opportunity to personally observe the matters in his declaration. *State v. Taylor*, 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316 (1993); *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166.

*Renode*, 8th Dist. Cuyahoga No. 109171, 2020-Ohio-5430, at ¶ 27.

{¶ 54} After reviewing the record, we find no basis upon which to conclude that the trial court abused its discretion in permitting I.D. to testify about the son's statements.

{¶ 55} First, the record reflects that the son's statements were not testimonial. The son was upset about what had transpired between him and appellant, and appellant and I.D. The son made the statement in the context of his belief that appellant did not love him based on the content appellant found on his cell phone.

{¶ 56} We cannot conclude that the son's statement, made to his mother in the privacy of her home following a traumatic event was made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for use at a later trial. Finally, I.D. testified that the son made the statement to her while he was upset and crying. She calmed him down after he made the statement, and then told him to get ready to go to the police station. The son did not make the statement after I.D. told him that they were going to the police station to file a report.

{¶ 57} Second, the record reflects that the son's statements were admissible as an excited utterance. Appellant's (1) discovery of the pornographic content on the son's cell phone, (2) ensuing physical action directed towards the son (throwing him to the ground by his arm and "whipping" him), (3) verbal berating of the son and I.D., and (4) participation in the verbal and physical altercation with I.D. were startling enough to produce a nervous excitement in the son, who was ten years old at the time. Although appellant was no longer at the residence at the time the son made the statements to I.D., the statements were made less than 20 minutes after the verbal and physical altercation between appellant and I.D., and less than 20 minutes after appellant had been berating the son for accessing the pornography on his cell phone. I.D. testified that she went to the police station approximately 20 minutes after the altercation with appellant ended.

{¶ 58} The record reflects that the son was still under the stress of excitement caused by appellant's discovery on his cell phone. I.D. testified that she found the

son crying in his room, underneath the covers.  The son was upset because appellant "didn't love him."  I.D. had to calm the son down.  The son's statement was related to the startling event — appellant's reaction after finding pornographic material on the son's cell phone.  Finally, the son personally observed the matters in his declaration because appellant's actions were directed at him.

{¶ 59} For all of the foregoing reasons, appellant's second assignment of error is overruled.  The trial court did not err or abuse its discretion in admitting I.D.'s testimony.

### C. Sufficiency

{¶ 60} In his third assignment of error, appellant argues that his endangering children and criminal damaging convictions were not supported by sufficient evidence.

{¶ 61} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense.  Crim.R. 29(A) and sufficiency of the evidence require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134.  "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶ 62}** The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

**{¶ 63}** Initially, we note appellant's arguments that I.D.'s testimony was not credible and that she "has demonstrated her hostility and bias against [appellant] given her interference with [appellant's] ability to see his own son" are not properly raised in a sufficiency context. These arguments pertain to the manifest weight of the evidence.

### 1. Endangering Children

**{¶ 64}** CCO 609.04(a) and R.C. 2919.22(A), governing the offense of endangering children, provide, in relevant part,

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen (18) years of age or a mentally or physically handicapped child under twenty-one (21) years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection or support.

> Proof of recklessness is also required. *State v. McGee*, 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus ("The existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A)."). A "[s]ubstantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result, or is likely to be of a certain nature." R.C. 2901.22(C). Thus, to support a conviction for child endangering under R.C. 2919.22(A), it must be

established, beyond a reasonable doubt, that [the defendant] (1) recklessly (2) created a substantial risk to the health or safety of one or more of his children (3) by violating a duty of care, protection or support.

*Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 25 (8th Dist.).

{¶ 65} Appellant raises several arguments in support of his sufficiency challenge that pertain to the offenses of endangering children in violation of R.C. 2919.22(B)(1) and (3). For instance, appellant argues that his son did not sustain injuries as a result of appellant's conduct nor seek medical attention after the incident, and that appellant had the right to discipline and punish his son. Appellant also reiterates his argument that the municipal court lacked jurisdiction over the child endangerment offense because the juvenile court had exclusive jurisdiction over the criminal proceedings. Appellant was charged with and convicted of violating R.C. 2919.22(A). Therefore, appellant's arguments are misplaced.

{¶ 66} Appellant reiterates his argument that I.D.'s testimony that appellant threw the son down to the ground and "told [the son] that he is not a part of his family, [appellant] does not have f[***] in his family" was inadmissible. (Tr. 15.) Based on our resolution of appellant's second assignment of error, we find no merit to appellant's assertion. The trial court properly permitted I.D. to testify about the son's statement.

{¶ 67} Finally, appellant argues that he cannot be convicted of child endangerment, in violation of R.C. 2919.22(A), based on the altercation between

him and I.D. pursuant to this court's holding in *Cohen*, 2015-Ohio-1636, 31 N.E.3d 695.

{¶ 68} The city, on the other hand, argues that appellant's child endangerment conviction was supported by sufficient evidence because appellant became enraged after discovering the pornography on his son's phone, and rather than talking to I.D. about his discovery, appellant "immediately whipped his son whom he had not seen for at least a month, told his son that he was no longer part of his family and repeatedly called his son a f[*****]." Appellee's brief at 9. The city argues that *Cohen* is distinguishable because in *Cohen*, the verbal and physical altercation between the parents was based on their relationship issues, whereas here, the son was the "central figure and subject" of the argument between appellant and I.D. In sum, the city argues that appellant "expressed several things in front of his son, that couldn't help but effect the mental and emotional health of [his son]." Appellee's brief at 9.

{¶ 69} In *Cohen*, the defendant-husband got into a physical altercation with his wife in front of their children. During the argument, the defendant pushed his wife into a wall, causing her to hit her head on a closet. The children witnessed the head injury sustained by the wife. The husband was convicted at trial of two counts of child endangerment, violations of R.C. 2919.22(A).

{¶ 70} On appeal, this court reversed the child endangerment convictions, concluding that the prosecution failed to establish that defendant's conduct created a substantial risk to the health and safety of the children that were present and

witnessed the physical altercation. *Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, at ¶ 30.

This court explained, that there was no evidence in the record that the children were

"*in any way part of the altercation involving their parent*s," and as a result, there

was "no evidence in the record that the children were at any risk of harm — much

less a substantial risk of harm — to their mental or physical health or safety" as a

result of defendant's actions. (Emphasis added.) *Id.* at ¶ 29. Furthermore, this

court concluded,

> Although we have little doubt that (1) hearing one's parents argue about getting a divorce and leaving the family's home and (2) viewing the type of inappropriate and irresponsible behavior exhibited by the parents in this case could have an emotional impact on a child, we cannot say, based on the record before us, that the city met its burden of proof. Simply because the two children were present in the home at the time of the altercation, may have witnessed part of the dispute and may have been (understandably) upset or confused by their parents' words and actions does not establish that Cohen violated a duty of care, protection or support to his children or that he, with heedless indifference to the consequences of his actions, perversely disregarded a known risk and thereby created a substantial risk to the health or safety of his children. As such, the evidence was insufficient to support Cohen's conviction for child endangering pursuant to R.C. 2919.22(A).

*Id.* at ¶ 30.

{¶ 71} After reviewing the record, we find this case to be distinguishable from

*Cohen*. In *Cohen*, the children were merely present at the time of the altercation

between their parents. The children were not, however, involved in the altercation

"in any way." *Id.* at ¶ 29. In the instant matter, unlike *Cohen*, appellant's son was a

part of, and directly involved in, an ongoing altercation that began when appellant

discovered the pornography on his son's phone and confronted him, and continued

to I.D.'s house where the altercation eventually ended. The ongoing dispute occurred between appellant, I.D., and their son. Unlike *Cohen*, where the subject of the parents' altercation was their marriage and the wife's assertion that she wanted a divorce, the subject of the ongoing altercation in this case was the son's sexual orientation.

{¶ 72} In addition to throwing his son to the ground, appellant verbally berated both his son and I.D. during the altercation about the ten-year-old son's sexual orientation. Unlike *Cohen*, where this court concluded that the defendant's actions could emotionally impact the children, appellant's actions in this case created a substantial risk to the son's emotional and mental health or safety. For all of these reasons, appellant's reliance on *Cohen* is misplaced.

{¶ 73} After reviewing the record, we find that appellant's child endangerment conviction is supported by sufficient evidence. I.D. testified that her son advised her that appellant grabbed his arm and threw him on the ground after discovering the pornography on the son's cell phone. Appellant told his son that "he is not a part of his family, [and appellant] does not have f[***] in his family." Appellant's actions directly involved the son in the ongoing altercation.

{¶ 74} The son continued to be involved in the altercation after arriving at I.D.'s house. Appellant directed anger towards both I.D. and his son at I.D.'s house. Appellant was yelling at I.D., "'[m]y son's a f[*****]g f[**].'" I.D. testified that appellant "kept proceeding to call [his son a] f**.]"

{¶ 75} Appellant's son was directly involved in the ongoing altercation, and the son's sexual orientation was the subject of the altercation. Appellant directed anger, both physical and verbal, towards his son throughout the altercation.

{¶ 76} The ten-year-old son's sexual orientation, whether it was established or undecided, is certainly a delicate, sensitive, and personal issue. Rather than inquiring about the issue and protecting or supporting his son, appellant — who had not seen his son for one month prior to the incident — became angry, berated his son, and led his son to believe he would no longer be a part of appellant's family or life. Appellant's reckless conduct upon first discovering the content on his son's cell phone created a substantial risk to his son's mental and emotional health or safety.

{¶ 77} Appellant's actions created a strong possibility that his son's mental and emotional health or safety would be harmed. The immediate harm that appellant's actions caused his son is evident from the record. When the son was outside of the home on the porch and appellant was calling him names, the son "broke down in tears and ran in the house[.]" When the altercation between appellant and I.D. ended, I.D. found her son in a room inside the house "under his covers in tears crying saying that his daddy didn't love him." Rather than supporting his son and making him feel comfortable, the record reflects that appellant's actions made the son feel scared, ashamed, and embarrassed.

{¶ 78} For all of the foregoing reasons, and based on the son's involvement in the ongoing altercation, we find that the evidence presented at trial by the city, if believed, sufficiently established that appellant's actions created a substantial risk

of harm to the mental and emotional health or safety of the son. Accordingly, appellant's endangering children conviction for violating R.C. 2919.22(A) was supported by sufficient evidence.

{¶ 79} Appellant's third assignment of error is overruled with respect to his endangering children conviction.

## 2. Criminal Damaging

{¶ 80} CCO 623.02(a)(1), governing the offense of criminal damaging or endangerment, provides "[n]o person shall [knowingly, by any means] cause, or create a substantial risk of physical harm to any property of another without his or her consent[.]" CCO 623.02 references R.C. 2909.06.

{¶ 81} In support of his sufficiency challenge, appellant argues that his criminal damaging conviction must be reversed because appellant "made no admission that he broke [his son's] phone." Appellant's brief at 9. Appellant's argument is misplaced.

{¶ 82} I.D. testified at trial that she contacted appellant after he left her residence and inquired where her son's cell phone was. Appellant advised her that the son's phone was "gone" and "over with." Appellant stated that he broke the phone. I.D. testified at trial that the son has an "LG Aristo" cell phone from T-Mobile. I.D. paid for the phone at the time of the incident. When asked about the value of the phone, I.D. testified, "[w]ith all the accessories and everything I had on it and stuff I bought for him, it was like $400, three, $400." (Tr. 13.)

{¶ 83} I.D.'s testimony, if believed, was sufficient to support appellant's criminal damaging conviction. Accordingly, appellant's third assignment of error is overruled with respect to his criminal damaging conviction.

### D. Manifest Weight

{¶ 84} In his fourth assignment of error, appellant argues that his convictions were against the manifest weight of the evidence.

{¶ 85} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 86} Although appellant raises separate assignments of error challenging the sufficiency and manifest weight of the evidence, appellant does not develop an argument in support of his manifest weight challenge with citations to the record and supporting authorities, as required by App.R. 16(A)(7). Rather, appellant merely references the arguments raised in his third assignment of error. *See Cleveland v. Hall*, 8th Dist. Cuyahoga No. 101820, 2015-Ohio-2698, ¶ 14, citing

App.R. 16(A)(7) (overruling appellant's assignment of error relating to a sufficiency challenge pursuant to App.R. 16(A)(7) because the appellant did not make a specific argument regarding why the convictions were not supported by sufficient evidence, and only addressed the issues relating to the manifest weight challenge). "Sufficiency" and "manifest weight" challenges present two distinct legal concepts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 23.

{¶ 87} App.R. 16(A) requires a party to separately argue each assignment of error. Pursuant to App.R. 12(A)(2), an appellate court may disregard any assignment of error, or portion thereof, if the appellant fails to make a separate argument. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 55.

{¶ 88} Notwithstanding appellant's failure to develop his manifest weight challenge, we find that appellant's endangering children and criminal damaging convictions are not against the manifest weight of the evidence.

{¶ 89} Appellant appears to challenge the credibility of I.D. and her trial testimony. Specifically, appellant contends that I.D. is not a credible witness and that her interference with appellant's ability to see his son demonstrates her hostility and bias towards appellant.

{¶ 90} The defense's theory of the case at trial was that I.D., not appellant, was responsible for the altercation that transpired at I.D.'s house. The defense suggested that I.D. assaulted appellant by throwing water on him and chasing him with a hammer. The city's theory, on the other hand, was that appellant was the

primary aggressor and that he was responsible for the verbal argument that escalated into a physical altercation.

{¶ 91} At the close of evidence at trial, the trial court found that appellant was "not credible at all." "'[A] conviction is not against the manifest weight of the evidence simply because the [finder of fact] rejected the defendant's version of the facts and believed the testimony presented by the [prosecution].'" *State v. Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, ¶ 71, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 2. The trial court, as the finder of fact, did not lose its way in resolving the conflicting theories based on the evidence presented at trial.

{¶ 92} After reviewing the record, we find appellant's convictions are not against the manifest weight of the evidence. The record reflects that I.D. testified consistently about the important aspects of the August 28, 2019 incident and appellant's involvement therein. We do not find in resolving conflicts in the evidence that the trial court, as the trier of fact, clearly lost its way in finding appellant guilty of endangering children and criminal damaging. Furthermore, this is not the exceptional case in which the evidence weighs heavily against appellant's convictions.

{¶ 93} For all of the foregoing reasons, appellant's fourth assignment of error is overruled. Appellant's convictions are not against the manifest weight of the evidence.

## E. Restitution Order

{¶ 94} In his fifth assignment of error, appellant argues that the trial court erred in ordering him to pay $400 in restitution to I.D. for damaging his son's phone because the trial court did not receive any evidence verifying the phone's value and instead "relied on I.D.'s estimated value of the phone in combination with the court's own recollection for how much it paid for a smart phone." Appellant's brief at 13. Without documentary evidence establishing the value of the phone, appellant contends that the trial court's restitution order is not supported by competent and credible evidence in the record.

{¶ 95} The criminal damaging or endangering count pertained to appellant's conduct of destroying the son's cell phone that I.D. paid for. The phone was an LG Aristo smart phone.

{¶ 96} An order of restitution is generally reviewed for an abuse of discretion. *State v. Santorella*, 8th Dist. Cuyahoga No. 105475, 2018-Ohio-274, ¶ 27. Where an appellant fails to object to the order of restitution or the amount of restitution, however, the appellant waives all but plain error. *State v. McLaurin*, 8th Dist. Cuyahoga No. 103068, 2016-Ohio-933, ¶ 10.

{¶ 97} Under Crim.R. 52(B), plain error affecting substantial rights may be noticed even though it was not brought to the court's attention. *Id.* at ¶ 11. "[A]ppellate courts are to notice plain error only in 'exceptional circumstances' in order to prevent 'a manifest miscarriage of justice.'" *State v. Keslar*, 8th Dist.

Cuyahoga No. 107088, 2019-Ohio-540, ¶ 21, quoting *State v. Long*, 53 Ohio St.2d 91, 95, 372 N.E.2d 804 (1978).

{¶ 98} In the instant matter, neither appellant nor defense counsel objected to the trial court's restitution order. Accordingly, appellant has waived all but plain error.

{¶ 99} R.C. 2929.18, governing payment of restitution, provides, in relevant part,

> (A)(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. * * * If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on *an amount recommended by the victim*, the offender, a presentence investigation report, *estimates* or receipts *indicating the cost of repairing or replacing property*, and *other information*, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

(Emphasis added.)

{¶ 100} Before imposing an order of restitution, a sentencing court must determine that "'the amount of restitution bears a reasonable relationship to the loss suffered.'" *McLaurin*, 8th Dist. Cuyahoga No. 103068, 2016-Ohio-933, at ¶ 13, quoting *State v. Borders*, 12th Dist. Clermont No. CA2004-12-101, 2005-Ohio-4339, ¶ 36. The amount of restitution must be determinable to a reasonable degree of certainty and supported by competent, credible evidence. *Id.*, citing *State v. Warner*, 55 Ohio St.3d 31, 69, 564 N.E.2d 18 (1990).

{¶ 101} In the instant matter, I.D. testified at trial that the son had an "LG Aristo" cell phone from T-Mobile. I.D. paid for the phone at the time of the incident. When asked about the value of the phone, I.D. testified, "[w]ith all the accessories and everything I had on it and stuff I bought for him, it was like $400, three, $400." (Tr. 13.)

{¶ 102} During the sentencing hearing, the trial court inquired about the phone's value. The prosecutor asserted that the phone was "purported to be $400." (Tr. 3.) The prosecutor explained that she did not have a receipt for the phone. After learning about the specific phone that was destroyed, the trial court stated, "I just bought one of those for my step grandson this summer. I know what they cost, unfortunately." (Tr. 4.)

{¶ 103} After reviewing the record, we find no error, plain or otherwise, with respect to the trial court's restitution order. The trial court did not commit plain error in determining the amount of restitution based on the victim's testimony that the phone's estimated value was $400, and the prosecutor's assertion that the phone had an approximate value of $400. Furthermore, the trial court was familiar with the cost of the specific phone that was destroyed based on its firsthand, personal experience of purchasing the phone for a relative. Contrary to appellant's assertion, the amount of the phone was not required to be established with absolute certainty by documentary evidence or a receipt.

{¶ 104} Based on the foregoing analysis, appellant's fifth assignment of error is overruled.

## III. Conclusion

{¶ 105} After thoroughly reviewing the record, we affirm the trial court's judgment. Appellant's endangering children conviction was not void for lack of jurisdiction. The trial court did not err or violate appellant's confrontation rights by permitting I.D. to testify about the statements her son made following the altercation. Appellant's convictions were supported by sufficient evidence and are not against the manifest weight of the evidence. The trial court did not commit plain error in ordering appellant to pay $400 in restitution to I.D. for damaging the son's cell phone.

{¶ 106} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY